## EX PARTE COLL.

### APPEAL from the District Court of Aguadilla.

No. 5.—Decided June 12, 1906.

BANKRUPTCY—SUSPENSION OF PAYMENT.—The object of the Congress of the United States in passing the Bankruptcy Act of 1898 was to suspend the effects of any statute upon the same subject in force in any of the different States of the Union.

ID.—General Orders No. 224, of 1899, in regard to suspension of payment, provides for a procedure in voluntary bankruptcy, and the said provisions are incompatible with those of the United States Bankruptcy Act, and should be considered inoperative in all its parts by virtue of the provisions of said law, which has been extended to Porto Rico by the Organic Act.

The facts are stated in the opinion.

*Mr. Franco Soto* for appellant.

MR. JUSTICE WOLF delivered the opinion of the court.

Miguel Coll y Rullán filed a petition in the District Court of Aguadilla asking that he be declared in a state of suspension of payment by reason of General Orders No. 224, dated December 21, 1899, alleging therein that a bill of exchange had been presented to him within forty-eight hours theretofore which he was not able to pay. The court refused to declare the suspension, being of the opinion that the military order has been repealed by the Code of Civil Procedure, which went into effect on the 1st of July, 1904, as well as by the law of March 9, 1905, with respect to special proceedings. From the order of refusal the petitioner has appealed to this court.

The appellant urges substantially that insolvency proceedings and similar matters form a realm in the law for themselves and that there is nothing in the Code of Civil Procedure which would be inconsistent with a debtor taking advantage of such proceedings and there is some force in the contention.

The following considerations, however, will make it appear that it is unnecessary for us specifically to pass upon

the question of such repeal. The Act of Congress approved July 1, 1898, generally known as the Bankruptcy Law, is entitled "An Act to establish a uniform system of bankruptcy throughout the United States." We are not called upon to decide whether by its terms such law would have applied to Porto Rico without the enactment of the Foraker Act.

The Bankruptcy Act provides in section 1, subdivision 8: "Courts of bankruptcy shall include the district courts of the United States and of the Territories." Section 2 of that act provides: "The courts of bankruptcy as hereinbefore defined, viz., the district courts of the United States in the several States, the Supreme Court of the District of Columbia, the district courts of the several Territories, and the United States courts in the Indian Territories and the District of Alaska, are hereby made courts of bankruptcy, and are hereby invested within their respective territorial limits as now established, or as they may be modified or changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, etc."

The question then arises whether the Foraker Act intended to make the Bankruptcy Law apply to Porto Rico, and we think that such intention appears from section 34 of that act. It provides:

"That Porto Rico shall constitute a judicial district to be called "the district of Porto Rico." The President, by and with the advice and consent of the Senate, shall appoint a district judge, a district attorney, and a marshal for said district, each for a term of four years, unless sooner removed by the President. The district court for said district shall be called the District Court of the United States for Porto Rico, and shall have power to appoint all necessary officials and assistants, including a clerk, an interpreter, and such commissioners as may be necessary, who shall have like power and duties as are exercised and performed by commissioners of the circuit courts of the United States, and shall have, in addition to the ordinary jurisdiction of district courts of the United States, jurisdiction of all cases cognizant in the circuit courts of the United States, relating to appeals, writs of errors and *certiorari*, removal of causes, and other matters

and proceedings as between the courts of the United States, and the courts of the several States shall govern in such matters and proceedings as between the district court of the United States, and the courts of Porto Rico.''

In the Bankruptcy Law, jurisdiction is defined by naming the courts that have it, and a similar jurisdiction has been extended to the district courts in Porto Rico by giving it the same powers as a district court in the United Sates might exercise.

The Supreme Court of the United States has held that the effect of the passage of a general bankruptcy law has been to suspend the operation of any State or local law. This was decided in the case of *Lamp Chimney Co.* v. *Brass & Copper Co.*, 91 U. S., 661, where the court says:

"Authority to establish uniform laws upon the subject of bankruptcy is conferred upon Congress; and, Congress having made such provision in pursuance of the Constitution, the jurisdiction conferred becomes exclusive throughout the United States."

Under this state of the law the question arises whether the military order No. 224 when availed of by the debtor would operate against the intent and purpose of the bankruptcy act of 1898. The case of *Boese* v. *King,* recorded in 108 U. S., page 379, is authority for the position that the New Jersey local statute was from the date of the passage of the Bankruptcy Act inoperative in so far as it provided for the discharge of the debtor from future liability to creditors who came in under the assignment and claimed to participate in the distribution of the proceeds of the assigned property. It was held in that case that it was necessary to determine whether the Bankruptcy Act of 1867 suspended or superseded all other provisions of the New Jersey statute, and that an assignment made thereunder was good between the parties. So that the determination of whether a particular local statute has been suspended or not depends upon the purpose and effect of that statute itself.

General Order No. 224 in its section 3 provides for the appointment of a syndicate consisting of three persons "who upon accepting the duties shall become coadministrators of the merchants suspending payment." Sections 4 and 5 provide for the duties of such administrators. Other sections provide for the meeting of creditors and their rights. Section 8 provides: "From the moment the suspension of payment of a merchant has been declared, no attachment of his property can be ordered nor any incidental demand of whatever kind looking to the nullity of the declaration of his suspension of payment shall be admitted by the court."

The order goes on to provide that the first thing in order at a meeting of creditors, after hearing statements and reports presented by the debtors and the trustees or any other information they might have is that "the plan or proposal for a settlement or agreement shall be discussed and voted upon." Then follow sections determining what the method of procedure for settlement shall be, and section 14 is as follows: "In case the debtor should be rejected by the creditors, the court shall forthwith declare the former a bankrupt and deal with him accordingly."

From a consideration of these various sections, it is apparent that the general order contains a scheme of voluntary bankruptcy. There is no question in such case of a merely voluntary assignment between the debtor and his creditor as was the case in *Boese* v. *King,* cited above. Even prior to the declaration of bankruptcy provided by section 14 the property of the debtor would be tied up by virtue of section 8 of the military order.

It appears to us, therefore, that the general order is in conflict with the terms of the Bankruptcy Law. Under the jurisprudence of the Supreme Court cited that order must be considered suspended. It follows that the action of the District Court of Aguadilla, refusing to admit the petition of

the debtor was a valid one, and the judgment appealed from must be affirmed.

*Affirmed.*

Chief Justice Quiñones, and Justices Hernández, Figueras and MacLeary concurred.